May it please the Court. Good morning, Your Honors. Jeff Culbertson, on behalf of Clear Value, Inc. and Richard Hasse, entered appeal from an adverse judgment from the Eastman District of Texas. As you know from the briefs, during a mid-trial sanctions hearing, the Court determined that Clear Value, Hasse and their lawyer, Mr. Waggett, engaged in discovery abuse. At the conclusion of that sanctions hearing, the Court ended the trial by striking Clear Value's pleadings and subsequently entered an order awarding more than $2.7 million in fees and costs against Clear Value, Hasse individually, and Mr. Waggett individually. We're here today because we believe the Court abused its discretion in entering that sanctions judgment. Is your position that there should have been no sanction or that it was too high? I think we have both positions, Your Honor. If there were any sanctions, if any sanctions survived this appeal, certainly lesser ones are more appropriate. Because the assertion, because the discoverability of these documents was a close call… I'm having trouble seeing why it was a close call. Help me understand your position. As I understand it, they were withheld from the specific discovery request for all tests of the defendant's product solely on grounds of work product, right? That's correct. And now it's agreed that there was no work product privilege. In fact, the testimony was that these tests were not done for purposes of litigation, or at least not for purposes of this litigation. Not for purposes of this litigation, that's correct. So what's the justification for withholding under those circumstances? The issues that surrounded the testing could give rise to a new set of facts from which litigation could arise, and I believe that's where the initial work product and privilege… I don't understand what you're saying. The circumstances surrounding these tests were that the product was either bad or it was mislabeled, and could give rise to claims such as warranty claims that Mr. Haase or Clerval could have against the defendants that were unrelated to these patent infringement claims. I wasn't involved in the initial determination of privilege, and that's why I speculate a bit as to what that decision was initially made about. That decision was… Well, we can't speculate about what happened. All we've got is the record here. That's right. And I'm having trouble seeing that there was any testimony that there was a good faith belief that these documents could be withheld under the work product protection as opposed to grounds of relevance. I think all of the testimony on that topic came after the court had already overruled the assertion of the privilege of the work product objection, and that testimony mainly involved Amiya Culpa on behalf of Mr. Wagner. And at that point after the decision had been made, he explained his basis for doing it. He admitted that it could be wrong or, in fact, may have been wrong in light of the court's decision. But that's where that testimony came from. Until that point, it had never been challenged. The assertion of the privilege – there wasn't a privilege law. I don't want to mischaracterize that. It wasn't added to a privilege law. But it was made clear that documents were being withheld under this assertion of privilege of work product. But that doesn't address the question of whether there was a colorable basis for the withholding. I'm not seeing what, in the light of the testimony that was given, what the colorable basis for withholding on work product grounds was. The colorable basis for withholding them is that they involved an investigation regarding the quality of this product that had been delivered by the defendants. It was unrelated to this litigation, but could give rise to another set of claims. The documents were not considered by the expert. Was there testimony to the fact that they were withheld because of a possible other litigation? Was there testimony that that was the basis for the work product claim? I don't believe that testimony came after trial. That issue was raised post-trial. That's a problem. There's no testimony that supports withholding on that ground. I understand, Your Honor. At the end of the day, if the court agrees with the district court's decision that there was no basis for withholding them, some sanctions inevitably will remain. So the question will remain, what sanctions are appropriate? This is a discovery violation. It's squarely addressed under Rule 37. Rule 37 allows for the dismissal of a case. It also allows for the imposition of fees. Let me back up just a moment. Assuming that we were to agree with the district court that there was a discovery violation here, do you admit that it was proper to award the $121,000? I mean, you may have an issue about whether the records were adequately supported, but assuming the records were adequately supported, are you contesting the $121,000 award? Other than the way they're supported, no. That post-trial briefing was significant, and undoubtedly there were significant briefings that may amount to $121,000. The problem that we have, as you point out, is the way they were supported, and that there could be no reasonable determination on that record. But that's where I think we wind up at the end of the day, is under Rule 37. But the first place to address what occurred under Rule 37 is the dismissal sanction. The Fifth Circuit has said dismissal is only appropriate in the most egregious cases. There are a number of cases where there have been repeated violations of court orders, multiple motions to compel. The Gonzales v. Trinity Industries case, for example, an altered tape was the subject of a motion to compel three times. The plaintiff lied about it. It was finally produced and found to be altered, and the Fifth Circuit reversed the dismissal sanction there. That's the amount of time. If you wanted to split your time with your colleague, you can use it as you see fit. Mr. Hoover. Your Honors, may it please the Court. I also have in courtroom today with me a fellow, Gordon Waggett. Mr. Waggett. As this Court stated earlier this year in I-10 Industry Associates, the most precious asset that an attorney has is his professional reputation, and to that degree, this Court said that on review, the facts of such case would be reviewed with great care to determine whether a sanction was properly imposed. Just to address a couple of the questions that the Court had, I believe there was testimony at the sanctions hearing about the prior consideration of litigation. What Mr. Waggett said is that his client had told him in the initial consideration of doing these tests that there were product concerns, quality control concerns, with one of his customers, the client's customers. And he wanted to have this product tested to see whether there were certain warranty claims or other kinds of things like that. Now, Mr. Hasse didn't say it quite that directly in his testimony, but Mr. Waggett certainly did, and there is testimony in the record on that. What did the District Court say about that? The District Court said that that was not really credible, in part because the emails that were contemporaneously done didn't mention the quality control issue, and we didn't put in any evidence after the fact. So how can we overrule his credibility finding about that? Well, I don't think we have to really reach that particular issue. There were more to the judgment call of whether or not these things, but made it a close question. First of all, let me say about Mr. Waggett, again, he was not litigation counsel. He was not lead counsel. The Court found he was not litigation counsel. But he was taking charge of the discovery. I mean, maybe he shouldn't have been doing it, and that he made a mistake because he wasn't familiar with this area, but that's just kind of too bad, isn't it? Well, I disagree that he was taking charge. I respectfully disagree that he was taking charge of the discovery. What he did is he communicated when the discovery request came in to lead counsel that he believed that these tests did exist and that he believed they were attorney-client privilege. At that point, you would assume that the obligation shifts to the litigation counsel to make the determinations over whether or not there really is an attorney-client privilege objection and how to go about asserting that. Mr. Waggett didn't draft the discovery objections here. He just reported to lead counsel that these documents did exist. And that they were protected. Well, it was his belief that they were protected. And his belief that they were protected was that they were not relied on at all by the expert in forming any opinions related to this case. I mean, going back again to something we briefed, the economy between the Markman stage and the Patent and Infringement of Merit stage. Yeah, but there's no claim here, once the testimony took place, that there was any basis for a work product protection claim with respect to this litigation. They gave that up, right? Including Mr. Waggett. Well, Mr. Waggett, once the objection was overruled, it continued to be asserted. I mean, it was communicated in the discovery responses. No privilege log was requested. No motion to compel was ever filed by Pearl River. They just let it go and raised it again at trial. No, but isn't my statement correct that at the hearing about this, that neither Mr. Waggett nor anybody else claimed that there was any basis for a work product claim with respect to this litigation? Mr. Waggett believed, at the time of the assertion, that there was a work product claim. And that was based on the fact that it was not discoverable pursuant to Rule 26. The work product claim, because it was generated in connection with this litigation, I thought they gave that up. He believed that it was in connection with other litigation. Other litigation, not this litigation. That was a mistake. But just a mistake, and because he was wrong, doesn't make it sanctionable. And again, the objection was communicated to the other side. If I may... Let me ask you, you heard the discussion that Judge Dyke had with Mr. Culbertson about the, I guess it was the Rule 37, sanctioned $121,000. Yes. Was Mr. Waggett made jointly and severally liable for that, or was he only made jointly and severally liable with respect to the other monetary sanctions? Mr. Waggett was made jointly and severally liable with the entire monetary sanction amount of $2.7 million. Which includes the $121,000. Which includes the $121,000. And one thing I'd like to add, if I may, is we do challenge the $121,000 on a couple of different grounds. We think that's the cap. The court still had to make findings that it was reasonable, including whether or not Pearl River did anything to mitigate it, whether they acted to get the court to compel these documents. I understand that. But the other one is that the court didn't take into account Mr. Waggett's ability to pay, which the Thomas case on Bonk and the Fifth Circuit requires the judge to do. And in this case, even the $121,000 sanction, according to the record, it was 70% of Mr. Waggett's net income for the prior three years before this sanction was awarded. And we think that 70% of his net income to his family and his living would be excessive. And the court should have considered that and taken into consideration setting a reasonable sanction amount. Okay. Thank you. We'll save you rebuttal time, and let's hear from Mr. Hollenbeck. Good morning. May it please the Court, Russ Hollenbeck with Wright, Brown, and Close for the Pearl River Defendants' Appeal. This case presents a serious breach. Tell us, assuming that there was a discovery violation here, okay, and assuming that the $121,000 could be an appropriate sanction, just assume both of those things, what's the basis for these other sanctions? I don't, first of all, see how under Rule 37 you could strike the pleadings relating to the invalidity claim and the trade secret claim or whatever it was because that's not related to the discovery violation. And the Supreme Court's decision in Hammond, which was incorporated in the history of Rule 37, suggests that the sanction has to be related to injury caused by the discovery violation. So how could all these pleadings be stricken? I'm having trouble understanding that. When a discovery violation and the conduct of counsel, not only in discovery but before the court, is so flagrant and so callously disregards the rules and the honor system by which lawyers and litigants must behave. But that's just rhetoric. There's a couple of Supreme Court cases which specifically hold that the sanction under Rule 37 has to be related to the injury caused by the violation. So how could the judge do anything more under Rule 37 other than to redress the injury caused by the violation? That has nothing to do with the invalidity claims. It has nothing to do with the trade secret claims. How can he strike those pleadings under Rule 37? He can strike those pleadings under Rule 37 when the conduct of the counsel and the conduct of the parties before him show that stronger sanctions… But there's the cause requirement. What case says that you can go to pleadings which aren't affected by the discovery violation and strike them under Rule 37? What case says that? Well, for example, Harris v. City of Philadelphia. That's a Third Circuit case, 47 Federal 3rd, 1311. Which says what? It says generally there should be a nexus between discovery, abuse, abusive conduct, and the sanctions unless the conduct demonstrates flavorant bad faith and supports dismissal of the pleadings or the imposition of a default judgment, which is exactly what Judge Davis found in this case. This was not a judge… What's the date of the Harris case? It's a 1995 case. Well, that would seem to be contrary to the Insurance Corporation of Ireland case in the Hammond Packing, which says that the sanctions have to satisfy a cause requirement. In this case… In any event, we're not in the Third Circuit, right? We're not. That's correct. In this case, Judge Davis was very judicious, very deliberate in deciding what sanctions were going to be appropriate and what was going to be meted out based on behavior that appeared literally right in front of him. This was a deception that had been going on for over a year and a half and unraveled in front of him during trial to a complete surprise to everyone who was in attendance, including myself. What he did then was say, okay, we're going to have a hearing. You can put on whatever evidence you want. You can bring whatever witnesses you want. I want to know everything there is to know about this before I decide what the sanctions are going to be. I understand, but the question is, what's his authority? What's his authority under 285, for example, to redress a discovery violation by awarding the entire amount of legal fees without regard to whether the fees were incurred as a result of a discovery violation? What's the authority for doing that? Under Rule 285, a lawyer and his party can be sanctioned in exactly the same way that Judge Davis did in this case if the conduct demonstrates flavored bad faith and disregard for the rules and not only the rules of discovery but the rules of conduct before the court in the trial. Why isn't Rule 37 an exclusive remedy for a discovery violation? The Fifth Circuit has held that under Rule – wait, under Section 285. They've held that you can't sanction discovery violations that would come under Rule 37 under 285. I think you have to back up and not start from the premise that this is only a discovery violation. Okay, why is that? This is more than just a discovery violation. This is conduct in front of the judge in trial. He sustained an objection to these documents during trial on grounds of attorney-client privilege. And they told him he wouldn't see these, and that was false. In your discussion with Judge Dyke, you focused on what happened at trial and the documents. From the record, I was trying to see is there – the record at least doesn't reflect any discovery problems or tussles, if you will, before this particular event at trial when Stoll was on the stand and the question was asked, there was an objection raised, and then things went from there, and then you had the sanctions. But there doesn't – at least as we see the record, at least as I saw it, there doesn't seem to be a history of problems here. Outside of this issue that ultimately culminated in the judgment against them, we didn't know that this test existed. We didn't know that they –  Am I correct in understanding that at least as far as the record appears to us in appellate court, there isn't any other history of discovery, abuse, and so forth? Not on other issues. Because the judge didn't say – the judge didn't refer to a situation where this is the straw that breaks the camel's back. I mean, I think this was a serious problem, but I'm just trying to get my hands around it. He didn't focus and refer to anything else. Am I correct? He did not. That is correct. Okay. Now, the other thing that struck me that I think – I think you have an excellent case here for sanctionable conduct. I mean, just, you know, putting my cards on the table, I can only speak for myself. But I do have some concerns with the penalty here. I mean, I looked at those Fifth Circuit cases, Bateson, Gonzales, and unless I'm wrong, there seemed to be conduct there that on its face was more egregious than what we have here. I'm thinking of the falsification or the alteration of the tape in one case and the refusal of the woman in the civil rights case to turn over information and so forth. Yet the court struck down in the face of that very egregious behavior dismissal sanctions. Doesn't that say or argue pretty strongly that while the sanction is appropriate here, dismissal sanction is inappropriate? Well, the question for this court – Do you understand what I'm saying? I understand exactly what you're saying. The question for this court is not whether sitting as a body, you would have imposed the same sanctions that Judge Davis did. No, I agree, but we have – The question is – It's abuse of discretion. It's abuse of discretion. And we have to look at the way – you know, we look at the way the Fifth Circuit has viewed abuse of discretion here. And what I'm saying is if they felt there was an abuse of discretion there in terms of dismissing claims, how do we not say there was an abuse of discretion here in dismissing claims? When the conduct doesn't seem as egregious as what was in those places, although it was wrong. Well, generally, when an abuse of discretion is found, it's because there's a breakdown in the deliberative process by the trial judge in meeting out the sanctions. For example, the Genentech case, the plaintiff cited, the administrative law judge didn't even have a hearing. Didn't make any findings about whether they were material documents or relevant documents. Well, let's put it this way. If this was just a discovery violation, let's assume that we disagree with you and we say this is just a discovery violation. Do you then agree that the imposition of these additional sanctions over and above the $121,000 was outside the judge's authority? No. Why not? I believe he was well within his authority. The discovery rules permit sanctions up to and including dismissal of a case and provided the judge looks at and deliberates. What about sanctions under 285? Can you award sanctions under 285 and inherent power for discovery violations? The discovery rules cover the sanctions for discovery violations. That's right. 285 and inherent powers cover conduct outside of that. Okay, but answer my hypothetical. Let's assume that it's just a discovery violation. Do you then agree that there's no authority to award additional sanctions under 285 and inherent power? I guess if you're asking me is there a case in which there's only a discovery violation and there's no violations of anything else, then I think if that were the case, then that's possible. But that's not the case here. In other words, it's correct that if it's just a discovery violation, there's no authority to award additional sanctions under 285 and inherent power? I think there are cases that say that. That say that you can't do it? If it's appropriate in those circumstances. No. Yes. Try to be clear. I am. If it's just a discovery violation, hypothetically, there is no authority under 285 and inherent power to award additional sanctions. The sole authority is under Rule 37, correct? If that's all there is, then that's all there is. Yeah. So what's the anything else that you're referring to? The conduct in front of the judge during trial with regard to explanations of why these tests were commissioned and why they were withheld, why they were not produced, what they were done for. He listened to everything the plaintiff said to present and put on in evidence about why they did them, looked at the emails that they presented, considered their testimony and evidence, and anything else they chose to bring. The record consists of everything they decided to bring on this issue. He described their explanations in terms like incredible, unbelievable, and utterly unconvincing. That means that when they stood before him in the courtroom, they not only had withheld these documents in discovery, but they asserted false and phony baseless privileges over them in trial and misrepresented to his face what was done and why it was done. Trials have to have the authority, they have the discretion, and I think they have to have the responsibility to police the conduct of litigants, not only in discovery, but in their courtroom during trial. Mr. Culbertson was discussing when he was up at the podium the $121,000, and he said that assuming there was a discovery violation here and some monetary sanction would be appropriate, but he had problems with the $121,000 figure, I think, because he felt there wasn't adequate support of records from counsel for Pearl River. Now, there does seem to be pretty good support in terms of costs that were involved there. Where in the appendix would you have us go to see the best, most complete statement of the costs that support the $121,000 award? In the first set of exhibits and documents that Pearl River presented to the judge was the notice of actual costs. Can you just give us the appendix pages? I can't recall the exact appendix page, but I'm happy to send a letter to the court after the argument today. Yes, that would be helpful. We presented two sets of exhibits and two sets of information to the judge. First was our notice of actual fees and costs, and then when Judge Davis said, I want you to break this down for the different rules for Section 285, for Rule 26 and 37, and tell me what applies, in your opinion, to each one, we sent a different set or an additional supplemental set of information and notice to the judge, breaking it down as best we could for each of these things. But you don't know where they are in the appendix? I can't recall the appendix page. Well, you're supposed to come here prepared because this is clearly an issue here. The purpose of the oral argument is to be able to ask you the questions that trouble us and to get answers to them, and you should understand what's in your briefs and appendix. You shouldn't come here unprepared. Yes, sir, I understand that, and I apologize. I just don't recall the page number. Well, there seems to be a little bit of it at 19 – do you have your joint appendix there? I do not. No, I mean on the counsel table? I didn't bring it into court this morning. Okay. I'm not familiar with what's in it. There is at 1903 of the joint appendix and 1989 some figures, and then there seem to be a lot of figures relating to costs that appear going up through page 2255. Do you see all of this? Counsel, I'll lend you my appendix. Okay. I mean, there seems to be fairly complete cost support, but I gathered that Mr. Culbertson's main concern was with the attorney fees, the lack of clear support for the amount of fees for the 121, and I'm wondering if you could, with the benefit of the appendix there, show us where you think that is well supported. It's sort of – I mean, I realize we're in a little bit of a green eyeshade issue here, but certainly it counts, but it is important, because you do have, I think, a very good argument that there was a sanction here, that there was sanctionable conduct and that there was a discovery of use, and it's not unreasonable in that arena to contemplate the award of fees, yet the other side has come back and said, you know, there's not an accurate statement of the fees, so we've got to try and get our hands around that. The fee statements that were presented to the district court wrote down in person, by month, and by category what was billed by each timekeeper on the case. These are the attorneys and legal assistants? Yes, sir. Now, where – okay, you've got Judge Newman gave you her – Oh, Counselor. Oh, Counselor, Mr. Culbertson, okay. Mr. Culbertson gave you his – where in the appendix do we have – can we see that breakdown? My time has expired, but I would say that it is – Please respond. Yes, ma'am. I will direct this court to the specific page as soon as I can, but I know that it is attached to the notice of supplemental fees and costs that was presented by Pearl River to the district court. Is it 1919? That was part of the original notice that was presented.  That exhibit that you're looking at, Judge, was further broken down by category, by what was incurred by timekeeper, by month, for either defense or prosecution of patent claims or related to the Rule 26 and Rule 37 violations. Also keep in mind that the fees and costs that were presented to Judge Davis were proven up by affidavits by the different lawyers for each firm representing Pearl River. And much of the – in fact, most if not all of what was represented in those fees was proceedings conducted before Judge Davis. He presided over the Markman hearing himself. There is an Exhibit A that starts at 1908 that has – would encompass the material, I think, to which Judge Dyke is referring, that has names of attorneys and billing rates and kind of a description of what was done and so forth. And then 1921, there's a notice of actual costs and attorney's fees. But I think, as Judge Newman indicated, it would be helpful if you could send to the court within the next couple of days that kind of – at least by – let's say by Thursday. MR. DAVIS. I will do that immediately. Yes, ma'am. MS. NIEUSMA. Is it clear what it is that we're asking for? MR. DAVIS.  MS. NIEUSMA. Okay. Thank you. MR. DAVIS. You want to see where in the appendix we have presented our evidence of fees and expenses to Judge Davis. MS. NIEUSMA. And when you write to us, check your – consult with Mr. Coberson, with counsel, so that if they want to argue with you, they can do so at the same time. MR. DAVIS. Absolutely. MS. NIEUSMA. And shall we say by midday on Friday, will that give you enough time to do the checking and see what you need? MR. DAVIS. That's all for me. MS. NIEUSMA. Does that make sense to you? Anything else we want to ask of counsel? MR. DAVIS. No. MS. NIEUSMA.  MR. DAVIS. I appreciate your time today. MS. NIEUSMA. Thank you. MR. DAVIS. We request that you affirm the judgment of Judge Davis. MS. NIEUSMA. Thank you. Okay, Mr. – you decided how to share your rebuttal time? MR. DAVIS. I would like to begin, if I can, just in response first to the issues about whether Judge Davis – whether this was something other than a discovery sanction. Judge Davis began the opinion very clear in the first paragraph that this was about Pearl River – or Clear Value's failure to produce two documents in discovery, these two test documents. That is the sole purpose that he stated in his order for the sanction. Now, Pearl River is trying to create additional grounds to support. Topolian v. Erman, which is a Fifth Circuit case that we cited, says that one of the things the court has to do to support sanctions – and this is something the district court had to do – was give a specific statement of the sanctionable conduct. He did that if it's a discovery abuse case. He did not do that if this is something about some other type of violation beyond that. Also, as far as the $121,000, we will provide that record site, but the document in the appendix at 1989-1995 is a document submitted by Pearl River to the court in response to the court's request that they delineate the amount of fees and expenses that were justified under each of the sanction provisions that the judge thought you could sanction pursuant to that. Does that break out between, in other words, Rule 37, 285, Inherent Powers? Yes, it does. What was the other one, 1927? 1920. 1920. Does it break out? Does it break out? In other words, you can go there and see, okay, X dollars attributable to Rule 37, and then… Yes, you can. The document itself says that. They stated it, and then the support for that is in the attachments that are in the appendix just beyond that number. What is your problem with the – I mean, you're obviously familiar with what was submitted and we'll take a look at them – what is your problem with the adequacy of the submission with respect to fees? If you're dealing with $121,000 only, it's different than if you're dealing with the entire amount of $2.7 million. $2.7 million… Let's just focus on the $121,000. Focus on the $121,000. The issue is the court can grant whatever they lost, essentially, caused by the failure. And what they did here is all of their $121,000 is the motion for sanctions and the post-trial briefing related to the motion for sanctions. I think there's case law that says that that is not sufficient, that it has to be something that they've lost in the preparation process of trial. They said all their $121,000 was basically the motion in post-trial, which we believe supports the idea that they were never prejudiced by the fact that these documents weren't produced earlier. I think that's also consistent with their trial position, that they weren't prejudiced. They didn't raise the prejudice until after trial. But specifically as to the $121,000, they say in this document, 1989 to 1995, that the total, $121,107.38, that was the entire amount that was attributed by Pearl River to the failure to produce these documents. Is there a breakdown of attorneys' time on that at some point? There is. There is. And it's broken down in terms of date, I believe, and the task, and the attorney. And again, it all relates to the preparation for the motion, the prosecution of the motion itself. So if that's the case, we'd have to take a look at it. But if that's the case, leaving aside your contention that they're not entitled to just what they got in bringing the motion, it would seem that in terms of what they came forward with, based on your description, there is fairly complete documentation. In terms of just spending time on that motion and the prosecution of it to create the $121,000. And then my only other objection is what I raised before to the court, is that I think it still should be sent back if you do decide to go with a sanction to Judge Davis to decide, as to Mr. Wagon, because we did have evidence in the record that he didn't consider as to what he could reasonably afford. As the 11th Circuit said in the case that we cited, that a sanction that's really unreasonable that can't be paid amounts to no sanction at all. I'd also like to raise a point. Before you go on to your last point, if I understand what you're saying in response to Judge Schall's questions, you're not finding fault with the documentation to support the $121,000. You're basically saying that the $121,000 documentation all relates to the sanctions motion and that you can't get the costs of preparing the sanctions motion under Rule 37. My question is, what authority suggests that that's not a proper award of costs under Rule 37? We have cited a couple of cases, I believe, in our brief. Again, I don't have the names right off the top of my head, that say that there has to be harm in addition to the creation of the motion itself in order to justify the sanction. Now, I don't know. Mr. Culbertson may have a different view. I probably ought to let him speak just real quick on the issue of whether he can test the amount of the sanction in terms of the specificity to the award. I would like to just state real quick, to the extent that, for whatever it's worth, is after we did our initial brief, the Fifth Circuit issued a decision in FDIC v. Maxson, in which it appears that they may have changed the standard of review. We cited this case in our reply brief, but what they say there is they go away from the case. We review the facts underlying the district court's decision to sanction for clear error and its underlying conclusions of law de novo, and then go on to say that we reviewed de novo a district court's invocation of its inherent power and the sanctions granted under its inherent power for abuse of discretion. And that's in your reply brief? It is in our reply brief. Thank you. Okay. Thank you, Mr. Hoover. Mr. Culbertson, you have a couple of minutes. Very briefly, Your Honors. With regard to the support for the fee application on the $121,000, we contested that in the same manner that we contested the larger fee application. As I look in the appendix right now, it appears it's supported in the same fashion in terms of summaries of the different timekeepers by month. Is there something wrong with their documentation? I mean, assuming that you can get the fees for filing a sanction motion, is there something wrong with the documentation they provided? I think it's inadequate to inform a court's reasonable determination because it doesn't break out the task, the time spent on the task, in a contemporaneous form, which is what this court's fee applications require, what the Fifth Circuit's fee applications require, and typically what you see in the district court when you're moving for fees. Here, when you've just got monthly summaries, it's difficult for anyone reviewing that record to come up with or to actually make reasonable determination. Just very briefly. So you seem to have a little bit of a different view than Mr. Hoover on that $120,000. My view as I look today during this discussion at the appendix is that that portion of the fee request was supported in the same manner, just with summaries, and I think that's inadequate. Can we dispute the amount? We can right now, only because it's not supported in a fashion that would inform a reasonable determination. If they were to come up with the contemporaneous timesheets to support it, we may not have any dispute over it. But to be clear, this was the third bite of the apple on this that they had. There were three fee applications made to the district court, and there were complaints at each level regarding those applications from our side. It was never written into the court. Just very briefly, I realize this is a discovery violation. The court says that we violated Rules 26 and the discovery order. Rule 37 is where this ought to be addressed. It tailors the sanctions that are available to the amount caused by the violation. This court's authorities on Section 285 awards mirrors the Fifth Circuit's authority that if the 285 finding is premised on litigation misconduct, then any award that's made under that would have to bear relation to the misconduct. Here the judge has just sanctioned four different authorities the exact same conduct, and when the post-trial briefing revealed to him that Rule 37 would limit the amount that he could award to the actual cost incurred by the violation, he reached out and he invoked his inherent authority in violation of chambers, and he reached out and made the exception of finding even a month after he had issued the initial order on this. And for those reasons, we think the court has used its discretion. Thank you, Mr. Culbertson, Mr. Hoover, Mr. Hollenbeck. So we've set the time for noon on Friday, but give your opponents enough time to argue with you about whatever you provide.